IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER THOMAS, #35333-044, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-00192-JPG |
| | ) |
| FAISAL AHMED | ) |
| and K. SCHNEIDER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court for consideration of a Motion for Summary Judgment filed by Defendants Faisal Ahmed, Md., and K. Schneider, PA-C, on August 5, 2022. (Doc. 33). Defendants seek dismissal of an Eighth Amendment medical deliberate indifference claim that Plaintiff Christopher Thomas brought against them for allegedly inadequate treatment of a right knee injury at the Federal Correctional Institution in Greenville, Illinois (FCI-Greenville). (*Id*.). Plaintiff filed a response in opposition to the motion. (Doc. 38). Because no reasonable jury could find that either defendant acted with deliberate indifference to Plaintiff's serious medical needs, the motion for summary judgment shall be **GRANTED** and this case **DISMISSED**.

### BACKGROUND

Plaintiff Christopher Thomas is a former inmate who was in the custody of the Federal Bureau of Prisons and housed at FCI-Greenville during the relevant time period. Thomas filed this action on February 18, 2021, alleging violations of his Eighth Amendment rights by persons acting under color of federal authority pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). (Doc. 1). In the Complaint, Thomas claims that Dr. Faisal Ahmed (Dr. Ahmed), the

1

clinical director, and Physician's Assistant Schneider (P.A. Schneider), a mid-level provider, denied him adequate medical care for a tear of his right lateral meniscus. (*Id*. at 18-20). Following screening of this matter under 28 U.S.C. § 1915A, the Court allowed Thomas to proceed with the Eighth Amendment claim against Dr. Ahmed and P.A. Schneider for denying him medical treatment for his right knee injury at FCI-Greenville (Count 1). (Doc. 8). Defendants moved for summary judgment on the merits after the close of discovery. (Doc. 33).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence*, 391 F.3d at 841. When a properly supported motion for summary judgment is filed, the nonmoving party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Id*. at 248; *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir 1994). If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

**MOTION FOR SUMMARY JUDGMENT**

Defendants filed for summary judgment on the merits of this claim on August 5, 2022. (*See* Docs. 33). They seek relief on four separate grounds. First, Count 1 is foreclosed by the United States Supreme Court's decision in *Egbert v. Boule*, 142 S.Ct. 1793 (2022). Second, the applicable statute of limitations bars that portion of Count 1 that arose prior to February 18, 2019. Third, no reasonable jury could find that the Defendants' treatment of the plaintiff's knee injury amounted to deliberate indifference. Finally, the doctrine of qualified immunity shields them from liability for money damages. Thomas opposes all four arguments. (Doc. 38).

**RELEVANT FACTS**

The parties offered the following facts in their summary judgment materials. To the extent there is a genuine factual dispute,[1] the Court presents the facts in the light most favorable to Thomas because he is the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 585 (2009). All reasonable inferences are then drawn in his favor. *Id*.

**A.   2016**

On or around June 2016, Thomas informed FCI-Greenville's medical staff that he was experiencing right knee pain. (Doc. 33; Doc. 38). Nurse Ashley Knebel examined his knee on June 23, 2016 and noted no swelling and no decreased range of motion. (Doc. 33-2, Ex. B, ¶ 7,

---

[1] Subject to the few exceptions discussed herein, Thomas did not dispute the facts presented by Defendants, despite receiving notice of the consequence of doing so. Along with their motion for summary judgment, Defendants filed a "Notice to *Pro Se* Plaintiff" (Doc. 34) to inform Thomas of the consequences of failing to dispute facts presented therein. Defendants emphasized that "the Court may take as true any facts alleged in the defendants' motion which are supported by affidavits and documentary evidence, unless the plaintiff contradicts those facts with counter-affidavits or other documentary evidence." (Doc. 34, pp. 1-3) (quoting FED. R. CIV. P. 56(e)) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" in a motion for summary judgment, the Court may "consider the fact undisputed for purposes of the motion" or, if appropriate, "grant summary judgment" if the movant is entitled to it).

Att. 2; Doc. 38, p. 2). The nurse wrapped his knee with an ACE bandage and instructed him to ice, rest, and elevate it. She told him to return if his knee did not improve in two or three weeks.

On July 18, 2016, Thomas used a sick call form to request an x-ray of his knee (Doc. 33-3, Ex. C, p. 2), and P.A. Schneider met with him one week later on July 25, 2016. (Doc. 33-2, Ex. B, ¶ 8, Att. 3). Thomas informed Schneider that his right knee pain began six weeks earlier when he slid into base during a softball game. Upon examination, Thomas reported "lateral meniscus tenderness" but no laxity, swelling, popping, or clicking. (*Id.*). Schneider suspected a knee sprain and recommended icing the knee, performing range-of-motion exercises, taking prescription steroids, and using over-the-counter pain medication (Naproxen). Schneider advised Thomas to return for further treatment if his symptoms persisted after four to six weeks. (*Id.*).

Thomas submitted another sick call request on October 11, 2016 (Doc. 33-3, Ex. C, p. 1), and Schneider met with him two weeks later on October 25, 2016. (Doc. 33-2, Ex. B, ¶ 9, Att. 4). Thomas recalls short bursts of relief from steroids followed by occasional pain when he "moves wrong." (*Id.*). He disclosed no use of over-the-counter pain medications. Upon examination, Schneider still noted full range of motion unaccompanied by swelling, laxity, popping, or clicking.[2] Schneider reminded Thomas to obtain pain medication from the prison commissary if he needed it. She also prescribed Naproxen (500 mg), ordered home physical therapy exercises three or four times per week, and ordered him to rest his knee for more than two weeks. Finally, Thomas was instructed to return, if his symptoms did not improve within six to eight weeks. He did not express additional complaints of knee pain or injury for the next seven months. (*Id.*).

---

[2] Although Thomas describes this as Schneider's first examination of him (Doc. 38), he offers no affidavits or documentary evidence to support this assertion. It is also contradicted by Defendants assertion that Schneider examined him on July 25, 2016, which is supported by evidence. (Doc. 33-2, Ex. B, ¶ 8, Att. 3).

4

**B.** **2017**

On May 30, 2017, Thomas returned to sick call requesting an x-ray for persistent knee problems. (Doc. 33-4, Ex. D). Thomas was reassigned to P.A. Elizabeth Mills, who met with him on June 8, 2017. (Doc. 1, ¶ 7; Doc. 18, pp. 8-9, ¶ 7:4; Doc. 33-2, Ex. B, ¶ 10, Att. 5). He reported pain and swelling with activity after injuring his knee during a softball game one year earlier. (Doc. 33-2, Ex. B, ¶ 10, Att. 5). He indicated that steroids, NSAIDs, and physical therapy exercises did not resolve the symptoms, and he reported no pain at rest. Mills examined Thomas and noticed a decreased range of motion with no reports of pain during the appointment. She recommended an x-ray for what she suspected was a soft tissue injury. In the meantime, her plan of care for Thomas included home physical therapy exercises and no high impact activity. (*Id*.).

A knee x-ray was taken July 3, 2017. It showed signs of "[m]ild osteoarthritis, small osteophytes extending off the patella, femoral condyle, and tibial plateau." (Doc. 33-2, Ex. B, ¶ 11, Att. 6). However, there was "[no] evidence of a joint effusion, acute fracture, or radiopaque loose body." (*Id*.).

Mills met with Thomas a second time on July 27, 2017. (Doc. 33-2, Ex. B, ¶ 12, Att. 7). Based on x-ray results, she requested an MRI of the right knee. (*Id*.). Thomas underwent the MRI on November 15, 2017. (Doc. 33-2, Ex. B, ¶ 13, Att. 8).

Schneider met with Thomas briefly for a routine "Medical Return Trip" encounter after the MRI, but before any results were available. (*Id*.).

Dr. Ahmed reviewed the MRI results on November 21, 2017. (*Id*.). The MRI showed degenerative changes to the knee and a lateral meniscal tear, but there was no indication of when the tear occurred. The doctor relayed these results to Mills, who recommended a "referral to ortho for chronic knee pain and [the] MRI showing meniscal tear" on December 5, 2017. (*Id*.).

**C.     2018**

On April 6, 2018, Thomas was seen by SLUCare Physician Group's Orthopedic Surgery and Sports Medicine Division. (Doc. 33-2, Ex. B, ¶ 14, Att. 9). He was diagnosed with a degenerative meniscus tear of his right knee and early onset arthritis. P.A. Lauren Smith noted that the symptoms are "activity-related and improved with rest." (*Id*.). She recommended "conservative treatment and education" that included "icing, [home] physical therapy exercises, anti-inflammatory medications, and [a] corticosteroid injection" which she administered at the appointment. (*Id*.). Smith explained that the injections could take up to two weeks to begin working and provide relief for up to three months. In the meantime, she prescribed NSAIDs. She instructed Thomas to avoid all high impact activities and return for further surgical consultation with Dr. Christopher Kim if there was no improvement after eight weeks. This was the only medical appointment Thomas attended for the knee injury in 2018, and he requested no others. (*Id*.).

**D.     2019**

Thomas did not seek additional treatment for his right knee until June 11, 2019, when he met with a nurse to discuss his torn meniscus.[3] (Doc. 33-2, Ex. B, ¶ 19, Att. 14). Although he reported no pain, Thomas explained that he was instructed to seek further treatment with Dr. Kim to discuss surgery if there was no improvement in his condition. The nurse scheduled an appointment with P.A. Mills. (*Id.*).

---

[3] Thomas attended medical appointments for other issues in the interim. For example, on August 18, 2018, for example, Thomas met with medical staff about an injury he sustained to his left hand while sliding into base during a softball game, but he did not complain of knee pain or injury. (*Id*. at ¶ 15, Attach. 10). And, beginning December 9, 2018, he received treatment for lower back pain that radiated down his left thigh and knee, but he did not complain about right knee pain or injury. (*Id*. at ¶¶ 16-17, Attach. 11-12).

Mills met with Thomas on June 24, 2019. (Ex. B, ¶ 20, Att. 15). He reported having a cortisone injection "a few years ago" and "trying to live with it" since then. (*Id*.). However, he was tired of limping with knee pain and swelling, and he wanted a referral for surgery. Mills noted that Thomas was "ambulatory without difficulty, right knee with no obvious joint deformity or effusion." (*Id*.). Mills nevertheless referred Thomas to an orthopedic specialist and made an appointment for him with Dr. Ahmed at the Chronic Care Clinic for August 2019. The Utilization Review Committee ("URC") and Dr. Ahmed disapproved Mills' referral to an orthopedic specialist on July 3, 2019. (*See* Doc. 1, p. 11).

Before meeting with Dr. Ahmed in August, Thomas returned to the medical department for medical complaints on three occasions, only one of which pertained to his knee. Thomas reported knee pain with daily activities on July 16, 2019, and explained that he was "no longer able to play sports due to pain." (Doc. 33-2, Ex. B, ¶ 22, Att. 17). Mills recommended stretching exercises, NSAIDs, and sick call if the pain persisted. She also made a note to follow up with Dr. Ahmed. (*Id*.).

Dr. Ahmed met with Thomas for the first time on August 6, 2019. (Doc. 33-2, Ex. B, ¶ 24, Att. 19). Upon examination of his right knee, Dr. Ahmed noted full range of motion, no "grimace of discomfort," and no catching. (*Id*.). Plaintiff appeared "comfortable and ambulatory" and could "change positions without problems." (*Id*.). Although Dr. Ahmed noted that Thomas wished to return to the orthopedist, Dr. Ahmed determined that there was no need for the referral because surgical intervention was not medically indicated. (Doc. 33-2, Ex. B, ¶¶ 24-25, Att. 19).

On October 17, 2019, Dr. Ahmed met with Thomas to discuss an unrelated medical condition. (Doc. 33-2, Ex. B., ¶ 26, Att. 20). Thomas did not complain about his knee at the

7

appointment. (*Id*.).  Thomas submitted no other sick call requests for his right knee and no other requests for anti-inflammatory pain medications until December 9, 2021. (Doc. 33-2, Ex. B, ¶ 27).

## ANALYSIS

Thomas brings his Eighth Amendment claim pursuant to *Bivens*, which is considered the federal counterpart to a civil rights action under 42 U.S.C. § 1983. *Bush v. Lucas*, 462 U.S. 367, 374 (1983). The two actions have frequently been described as "conceptually identical." *Green v. Carlson*, 581 F.2d 669, 673 (7th Cir. 1978). Because of this, courts considering claims brought under *Bivens* routinely look to § 1983 case law for guidance. *Id*.

In both contexts, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" that is prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To prevail on a claim, a prisoner must show that he or she has a medical need that is sufficiently serious, which is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would recognize the need for a doctor's care. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The prisoner must also show that each defendant responded with deliberate indifference, which occurs when the defendant knew of and disregarded an excessive risk to inmate health or safety. *Id*.

Although courts have drawn parallels between *Bivens* and § 1983, the two actions are not exactly the same. Section 1983 and *Bivens* derive from different sources of authority and offer a different scope of remedies. Section 1983 allows an individual to bring suit for money damages and other relief against a state actor for violations of the individual's constitutional rights, but there is no corresponding federal statute that authorizes the same relief against individual federal agents for constitutional deprivations. *Ziglar v. Abbasi*, 582 U.S. 120, 129 (7th Cir. 2017).

8

The United States Supreme Court decided *Bivens* against this backdrop. In *Bivens*, the Court recognized an implied damages remedy against individual federal agents for violations of the Fourth Amendment prohibition against unreasonable searches and seizures. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 392 (1971). The Supreme Court has since recognized this remedy against federal officers in only two other contexts, including a Fifth Amendment due process claim involving gender discrimination in *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment deliberate indifference claim brought by a federal inmate's estate for inadequate medical treatment of the inmate's asthma in *Carlson v. Green*, 446 U.S. 14 (1980). For over three decades, the Court has declined to extend the remedy to include any new context or new category of defendants.

**A.     *Egbert v. Boule*, -- U.S. --, 142 S. Ct. 1793 (2022)**

Defendants maintain that Count 1 represents an unauthorized expansion of the *Bivens* remedy which is now foreclosed by *Egbert v. Boule*, -- U.S. --, 142 S. Ct. 1793 (2022). In the recent *Egbert* decision and earlier *Ziglar* decision, the Supreme Court made clear that further expansion of the *Bivens* remedy is a strongly disfavored judicial activity. *See Ziglar*, 582 U.S. at 135. For this reason, a district court presented with a *Bivens*-type claim must first determine whether the claim differs in a meaningful way from the claims previously authorized by the Supreme Court. *Id*. at 139-40. If so, the district court must next consider whether "special factors" counsel hesitation in expansion of the remedy into a new context without congressional action. *Id*.

The analytical framework announced in *Ziglar* remained unchanged by *Egbert*. The *Egbert* Court merely echoed the *Ziglar* Court when pointing out that the analysis often boils down to a single question: whether there is any reason to think that Congress is in a better position to create

9

a damages remedy. *Egbert*, 142 S. Ct. at 1803. As the *Ziglar* Court already recognized, "[t]he answer will most often be Congress." *Ziglar*, 582 U.S. at 135.

In this particular case, *Egbert* does not foreclose Count 1. Thomas's Eighth Amendment claim presents the same context as *Carlson*. Both claims arise from the denial of medical care at a prison. In *Carlson*, the plaintiff's claim arose from denial of treatment for asthma, while Thomas's claim arises from inadequate medical treatment of a knee injury. Both claims are against prison medical officials. Both implicate the Eighth Amendment right to be free from cruel and unusual punishment in the form of inadequate medical care. Judicial guidance for such claims is well developed: "The Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—"deliberate indifference to serious medical needs." *Ziglar*, 582 U.S. at 148 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The medical deliberate indifference claim at issue represents no expansion of *Bivens*. Accordingly, Count 1 is not foreclosed by the Supreme Court's decision in *Egbert*, and Defendants are not entitled to summary judgment on this ground.

**B.     Statute of Limitations**

Defendants next argue that this claim – or some portion of it – is time-barred. The statute of limitations for a *Bivens* action is determined in the same manner as a civil rights action under § 1983. The court borrows the statute of limitations for personal injury actions from the state where the alleged injury occurred. *Chambers v. Cross*, 788 F. App'x 1032, 1033 (7th Cir. 2019) (citing *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir. 2000)). Thomas's injury occurred in Illinois, which imposes a two-year statute of limitations on personal-injury claims. 735 ILL. COMP. STAT. 5/13-202. This two-year period applies to the Eighth Amendment claim of medical deliberate indifference. *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017).

Because Thomas filed this action on February 18, 2021, the question is whether the claim against either defendant accrued before February 18, 2019 and is time-barred.

### 1.     P.A. Schneider

P.A. Schneider met with Thomas about his right knee injury twice: July 25, 2016 and October 25, 2016.[4]  At the first appointment on July 25, 2016, Schneider met with Thomas to discuss the knee injury he sustained six weeks earlier.  (Doc. 33-2, Ex. B, ¶ 8, Att. 3).  Schneider treated the plaintiff for a suspected sprain.  (*Id.*).  At the second appointment on October 25, 2016, Thomas described occasional pain.  (Doc. 33-2, Ex. B, ¶ 9, Att. 4).  After examination of Thomas's knee, Schneider ordered continued treatment with prescription Naproxen, over-the-counter pain medication, home physical therapy exercises, and rest.  (*Id.*).  These two appointments in 2016 form the basis of the medical deliberate indifference claim that Thomas brought against Schneider in 2021.  Schneider's treatment of him began and ended more than four years before he filed suit.  This is well beyond the applicable statute of limitations.

Thomas invokes the discovery rule to save his claim against this defendant, arguing that he did not discover the nature and scope of his injury or the wrongdoing of the physician's assistant until he underwent an MRI in November 2017.  (Doc. 38).  According to the Illinois discovery rule, the statute of limitations does not begin to run until a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused.  *See Stark v. Johnson & Johnson*, 10 F.4th 823 (7th Cir. 2021) (citing *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 360-61 (1995)).  Thomas knew about his injury when it occurred in June 2016, and he knew the exact diagnosis following his MRI in November 2017.  (*See* Doc. 33, p. 3) (recognizing that November

---

[4] Although Schneider met with Thomas for a routine "Medical Return Trip" encounter after the MRI in November 2017, the parties do not assert that this brief encounter that occurred before any test results were available formed the basis of the claim against this defendant.  (Doc. 33-2, Ex. B, ¶ 13, Att. 8).

2017 MRI "clearly show[ed] meniscal tear"). Thomas pinpointed P.A. Schneider's failure to clearly identify his injury prior to the MRI and her treatment of it as a knee sprain as the reason for his deliberate indifference claim against her. Even if the Court applies the discovery rule, it does not save this claim. Thomas's decision to file this action in 2021 dooms his claim against P.A. Schneider for her alleged misconduct in 2016. Count 1 against P.A. Schneider is time-barred, and this defendant is entitled to summary judgment on statute-of-limitations grounds.

### 2. *Dr. Ahmed*

Dr. Ahmed had three encounters with Thomas about his knee pain on the following dates: November 21, 2017, July 3, 2019, and August 6, 2019.[5] Dr. Ahmed seeks summary judgment only on that aspect of the claim that pre-dates February 18, 2019. The Court found one instance when Dr. Ahmed had any involvement in Thomas's care for right knee pain prior to that time: November 21, 2017.

On November 21, 2017, Dr. Ahmed reviewed MRI results for Thomas's right knee. (Doc. 33-2, Ex. B, ¶ 13, Att. 8). Dr. Ahmed scheduled no appointment with the plaintiff, performed no examination of his knee, and made no decision regarding his care or treatment. Dr. Ahmed merely relayed MRI results to P.A. Mills for an appointment with Thomas and a referral to a specialist on December 5, 2017. (*Id.*). Count 1 against the doctor does not stem from this brief encounter. The claim instead arises from the two appointments that occurred on July 3, 2019 and August 6, 2019, and the parties do not dispute that Count 1 against Dr. Ahmed for his care of Thomas in 2019 is timely. Count 1 against Dr. Ahmed is not time-barred, and this defendant's motion for summary judgment on statute-of-limitations grounds shall be denied.

---

[5] The doctor also met with him about an unrelated matter on October 17, 2019, and it is undisputed that this appointment did not involve any complaints of right knee injury or pain. (Doc. 33-2, Ex. B, ¶ 26, Att. 20).

### C.      Deliberate Indifference

The Court next considers the merits of this claim against P.A. Schneider and Dr. Ahmed. Prisoners have a right to receive adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976).  A claim for constitutionally inadequate medical care requires a plaintiff to demonstrate (1) an objectively serious medical need; and (2) an official's deliberate indifference to the need.  *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).  Defendants do not dispute that Thomas's knee injury was objectively, sufficiently serious to trigger protection under the Eighth Amendment.  They seek summary judgment on the ground that no reasonable trier of fact could find that they acted with deliberate indifference to Thomas's knee injury.

Deliberate indifference occurs when an official is aware that a prisoner faces a substantial risk of serious harm but consciously disregards the risk by failing to take reasonable measures to address it.  *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).  This standard is generally met with evidence that the official knows of and disregards an excessive risk to inmate health or safety, or the official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and fails to take steps to avoid the risk despite making the inference. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Negligence, gross negligence, and medical malpractice do not establish deliberate indifference. *Petties*, 836 F.3d at 728.

Deliberate indifference may be inferred when a prison medical provider's treatment decision is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). This standard is also satisfied by evidence that the treatment was "blatantly inappropriate." *Pyles*

13

*v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)).  When a defendant persists in a course of treatment that is known to be ineffective or inexplicably delays treatment for no penological reason, then deliberate indifference can be inferred.  *Petties*, 836 F.3d at 729-31.

  1.  P.A. Schneider

  A reasonable jury could not infer deliberate indifference on the part of P.A. Schneider, even if Thomas's claim against this defendant is not barred by the applicable statute of limitations. Her treatment of Thomas was limited to two appointments with him soon after his injury.  On July 25, 2016, Thomas reported lateral meniscus tenderness but demonstrated no laxity, swelling, popping, or clicking. (Doc. 33-2, Ex. B, ¶ 8, Att. 3).  Schneider suspected a sprain and treated him accordingly, with ice, range-of-motion exercises, and prescription steroids.  She also recommended over-the-counter pain medication (Naproxen) and encouraged him to seek further treatment if he did not improve. (*Id.*).

  At the second appointment on October 25, 2016, Thomas described relief from the steroids, occasional pain when he "moves wrong," and no efforts to obtain over-the-counter pain medication. (Doc. 33-2, Ex. B, ¶ 9, Att. 4). Upon examination, Schneider still noted full range of motion unaccompanied by swelling, laxity, popping, or clicking.  Schneider reminded Thomas to get pain medication from the prison commissary, if needed, and also prescribed him Naproxen (500 mg), ordered home physical therapy exercises, and instructed him to rest his knee.  He was again encouraged to return if his symptoms did not improve within six to eight weeks, but he did not return. (*Id.*).

  P.A. Schneider's treatment of Thomas's knee injury was not so blatantly inappropriate that it rose to the level of deliberate indifference.  Misdiagnosing an injury does not necessarily amount

to deliberate indifference. *See Zackery v. Mesrobien*, 299 F. App'x 598, 600-02 (7th Cir. 2008) (misdiagnosing a torn meniscus as osteoarthritis did not establish deliberate indifference by itself, since plaintiff "submitted no evidence that would allow a reasonable fact-finder to conclude that [the defendant's] decisions were based on anything other than medical judgment," even though it "may have been prudent to order further testing."). Here, the evidence reveals that Schneider's treatment plan was consistent with the plan used by providers inside and outside of the prison. As such it was not so far afield from professional standards that it amounted to deliberate indifference. P.A. Schneider is also entitled to summary judgment on the ground that her conduct did not amount to deliberate indifference.

### 2. *Dr. Ahmed*

The evidence does not support a reasonable inference that Dr. Ahmed acted with deliberate indifference. Dr. Ahmed's three encounters with Thomas about this matter consisted of the doctor's review of MRI results in November 2017, his disapproval of Thomas's request for surgical consultation with an orthopedist in July 2019, and his examination of Thomas in August 2019. The doctor's review of the MRI did not accompany an appointment, treatment decision, or examination of Thomas; he simply forwarded test results to P.A. Mills for a referral to an outside specialist for further evaluation. The doctor's examination of Thomas in August 2019, after disapproving his request for a surgical referral one month earlier, does not establish deliberate indifference. Dr. Ahmed recognized that Thomas wanted surgery, but the doctor determined that surgical intervention was not medically indicated at that time, given that Thomas appeared comfortable and ambulatory, changed positions without problems, showed full range of motion, had no "grimace of discomfort," and demonstrated no catching. (*Id.*). (Doc. 33-2, Ex. B, ¶¶ 24-25, Att. 19). Thomas's disagreement with his medical provider, alone, establishes no Eighth

Amendment violation. *See Pyles*, 771 F.3d at 409 ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment is insufficient, by itself, to establish an Eighth Amendment violation.") (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). Dr. Ahmed is entitled to summary judgment on the Eighth Amendment claim against him.

**D.     Qualified Immunity**

The doctrine of qualified immunity protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). One component of the court's qualified immunity analysis is whether there was a constitutional violation. *Id*. Because the Court has concluded that no constitutional violation occurred under the Eighth Amendment, no further analysis of the qualified immunity argument is needed. *Gatzimos v. Garrett*, 431 F. App'x 497 (7th Cir. 2011) (citing *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057-58 (7th Cir. 2011)).

**E.     Conclusion**

Based on the foregoing, the Court concludes that P.A. Schneider and Dr. Ahmed are entitled to summary judgment on the single claim against them. Although *Egbert* does not foreclose this claim, Count 1 is time-barred against P.A. Schneider. Moreover, no reasonable jury could find that P.A. Schneider or Dr. Ahmed acted with deliberate indifference when responding to Thomas's knee injury. And because there was no constitutional injury, the doctrine of qualified immunity defense need not be addressed herein.

**DISPOSITION**

Defendants' Motion for Summary Judgment (Doc. 33) is **GRANTED**. **COUNT 1** is **DISMISSED** with prejudice against Defendants **FAISAL AHMED** and **K. SCHNEIDER**. Because no other claims remain pending, the entire action is **DISMISSED with prejudice**.

If Thomas wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Thomas plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Thomas does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2). Moreover, if the appeal is found to be nonmeritorious, Thomas may also incur a "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: 3/14/2023**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**
